Good morning, and may it please the Court, I'm Joshua Weiss from the Federal Public Defender's Office here on behalf of Appellant Kevin Tran. I'd like to reserve two minutes and I will keep my half o'clock. The officers violated the Fourth Amendment by searching the car in Mr. Tran's backpack without probable cause and by prolonging his detention in violation of Rodriguez. I'd like to start by focusing on the prolongation issue, specifically zeroing in on two delaying actions that the officers took that were unrelated to the mission of the stop or any reasonable suspicion that they had and was therefore unreasonable under Rodriguez. Those two actions specifically that I'm referring to is first when the officers traced Mr. Tran and the driver and delayed by more than two minutes that way, and then second when they demanded Mr. Tran's I.D. and ran a records check on him, which added an additional three minutes of delay there. Counsel, what do we do with the fact that it is not contested apparently now that the officer says he smelled the odor of burning marijuana and also the fact that when he asked Mr. I guess it was Nguyen to step out of the car, he, in conducting the pat-down frisk, he admitted that he had a knife in his pocket and it was at that point that he found a container of marijuana. Why does that not now ripen into reasonable suspicion that the driver may be operating under the influence of marijuana? So we're raising two grounds here in terms of the prolongation. It would be a question of whether the officers diligently pursued the investigation of any of either the mission of the stop originally, the registration, or any reasonable suspicion. But they stopped him for no registration. Right. According to the facts that there was marijuana they smelled, or at least one of them smelled when they're walking toward it, and then they smelled burning marijuana from the car. What happened happened. What are they, in your view, supposed to do at that point? So, I mean... As opposed to the five minutes extra you say they took. Yeah. At that point, let's say arguably they had reasonable suspicion. We contend that they did not have probable cause of a DUI. Probable cause is a higher burden and it... But if they didn't have probable cause, even though they smelled marijuana when they go to the car, they smelled burning marijuana in the car, that's not probable cause that someone has been driving the car under the influence of marijuana. Or has marijuana out and open in the car while driving, which as I understand is also a violation of California law. The latter is just an infraction that I don't believe is... All right. Let's talk about driving under the influence. Yeah, yeah, yeah. Indeed. So, non-oblivious to your honor, marijuana, the smell of marijuana could linger for hours and it is lawful to smoke in a car in a parked driveway, for example. But he did say, I smelled burning marijuana. I don't think he said burning. It was burned. Burned. Okay. And I don't mean to be nitpicky, but there's no... He doesn't say he saw smoke. He doesn't say it was recent. He doesn't say how powerful it was. We don't have evidence along those lines. And in Malik and Vasquez, the court said that the smell of marijuana alone is not enough. Now, if we were to imagine probable cause, let's say we were arguing about an incident. It would be strange, and I think without probable cause, to arrest the driver just based on the smell. What they would do is suspect him of driving under the influence and give a field sobriety test to Ben. And if he failed it, that would raise it to the level of probable cause. Okay, but before we get to that, you were challenging the pat-down frisk. And it seems to me that for officer safety purposes, the officer, when he made the stop, was by himself. He's got two people in the car. He's now conducting an investigation into whether or not the driver's operating the vehicle under the influence of marijuana. The driver admits when he says, if I pat you down, am I going to find anything harmful? And he's got a knife on him. And then he finds the clear glass container that appears to contain marijuana. Why? What's wrong with the pat-down frisk at this point? So the pat-down could happen only, not if there was reasonable suspicion, excuse me, of a crime, but that he was armed and dangerous. Well, if he's got a knife. I believe that that admission happened after the frisk had already begun. And then the question, if we even... Wouldn't the frisk be justified by the two factors, one, the smell of burned marijuana, but also the fact that you had a lone officer and two individuals in the car? I don't see how the smell of marijuana would give someone suspicion that the occupants were armed and dangerous. Now, if I could, even if the initial frisk was lawful, there's the separate question of demanding the passenger's ID, not the driver, and running that. And I think under Landorus, that was unlawful. And that alone is enough to be an unreasonable prolongation under Rodriguez. So, and I'm not giving up on the former, but I think that's an easier argument. And that alone, and I think the government's brief kind of indicates that it wasn't a delay to run the passenger's ID, because they were going to get the driver anyway, but the officer's body cam video clearly shows that he ran the IDs one at a time. So at video exhibit E, starting at minutes, at sentence 24... You mean separately, or he didn't take both IDs at the same time? He took them both, but then he sits in his car, runs one, starting at minute 724 of the video. That takes about a minute. And then at minute 915, he starts running the second one, and that takes an additional two and a half minutes. Well, you can't do two at once, can you? Exactly. So my point being that just running the passenger's added time to the stop. It was going to run the driver anyway, meant that there was no delay that resulted from running the passenger. And that's just not true. But now we have a situation where, with the smell of marijuana, with a container containing marijuana, the question is, is there any more marijuana in the car? And at some point, what, over 28 grams, it becomes a crime under California law, because it's presumed to be possession with intent to distribute. Just on the prolongation issue, the question is, if they were diligently pursuing any had nothing to do with that. That was an unrelated investigation. And that alone, to waive the stop, rendered the seizure unlawful at that point. The fact that the car registration had been expired for two years, and there were scratch marks on the license plate indicating that the tab that may have been there before was now missing, and the officer was suspicious that the car might be stolen. If that were the case, wouldn't it be reasonable to focus on the passenger as well? I want to, well, I really don't believe there's evidence of car theft here, and the officer's never followed up on that at any point. Well, they may not have followed up on it, but the officer's declaration says, in my training and experience, when a car's registration has been expired for more than a few years, and it's not stolen. In Mr. Nguyen's case, the registration had been expired for nearly two years. Before even the threats happened, the officer asked questions and retrieved the information that should have put any of these, and I think did put these suspicions on us. I've listened to the explanations and watched the body camera. I didn't find the explanations to be terribly convincing. I think they raised more questions than they answered. And I wasn't being specific. My apologies. What I meant was that he ran the license plate, and it wasn't reported stolen. He was given valid proof of insurance on the vehicle. He didn't run the plate. I don't think he ever ran the van. He did run the van, which is something he failed to do, but something I failed to point out in the briefs that I think is important is that the police report at ER 100 states that when he ran the license plate, the true owner came back as Linh Nguyen. Same last name as the driver, which corroborated what the driver said. It was his mother, Mrs. Nguyen, who owned the vehicle, I think. And then that, on top of the valid insurance on the vehicle, the valid driver's license, I just don't think there was probable cause of vehicle theft here, especially given that the officers did all these unrelated investigations instead of taking the basic step of running the van, which would have been the fastest way and the most diligent way to corroborate or dispel their suspicions. You have about a minute left. Do you want to reserve? Yes, thank you very much. And we'll give you two minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Melissa Rabbani for the United States. This Court has a straightforward path to affirming the District Court's decision, which is that under the Vasquez decision that we've cited in our briefs, it's clear that the smell of burned marijuana, with other factors, does support probable cause to search a vehicle for evidence of driving under the influence. Here, as the Court has noted in its questions to appellate's counsel, it was not controverted in the record that the officer smelled burned marijuana. His initial report said he smelled marijuana. He clarified in a declaration later that it was burned marijuana, and there was no declaration to the contrary from the defendant. There was nothing from defendant or the driver saying, neither of us had smoked in a while, the car couldn't have smelled that way. And in fact, that would have been difficult for them to do, given that the driver did ultimately fail the field sobriety test. And was it consistent in when he last smoked marijuana? It was, Your Honor. I believe he admitted that he had smoked earlier that day. Appellate's counsel noted that the smell of marijuana can linger for hours, but so can the effects of marijuana. After smoking it, even a few hours later, it likely isn't safe to drive, and in this case, it was not. As for the prolongation issue, the appellate's counsel focuses on the search of the passenger's ID, but as the Court has noted, there was probable cause, and certainly at least reasonable suspicion, that the vehicle was stolen, which does support running the passenger's ID to see whether the car is registered to him, whether there's any outstanding warrant for vehicle theft, or anything along those lines. The defense has pointed to the fact that the car hadn't been reported as stolen, and maybe that diminishes your suspicion that the car is stolen, but it certainly doesn't dispel it. And together with the fact that the registration had been expired so long, the tags were torn off, which is unusual. The explanations, as the Court noted, are vague and kind of shift in where he's going with it. Some of it is implausible. It seems implausible that another officer would have torn off the existing tags and just told him to fix it. And based on all of that, even though perhaps the theft hadn't been reported, there is still probable cause to believe that the car had been stolen. So defense points to some factors that may have... Do you need probable cause, or is reasonable suspicion at that point sufficient to justify prolonging the investigation in order to dispel or confirm those suspicions? Reasonable suspicion is sufficient, Your Honor. I appreciate that question. The government believes there is probable cause on both the DUI and the theft, but as far as the prolongation argument goes, reasonable suspicion is enough. And there certainly is that, taking all the facts that we just went through with respect to vehicle theft. I mean, frankly, I'm more concerned about the fact that they didn't more quickly pursue the theft investigation. But by that point, they had discovered enough in the way of quantities of marijuana, coupled with the smell and so on, to establish, I think, probable cause to arrest at least the driver for driving under the influence. Agreed, Your Honor. I know that the appellant's brief makes some arguments about the order in which things are done, and the field sobriety test wasn't conducted until a certain point, but it's clear from the officer's declaration, and I believe the body cam, that he is in fact pursuing two investigations at once. He tells the driver, I've got backup coming. I have to figure out who actually owns this car, and whether you're authorized to drive it, even if it does belong to your mom, as you've said. And I also have to figure out if you're okay to drive. And so he's doing both of those things at once. So while he's searching the car for evidence of either crime, he's not yet conducting the field sobriety test, but there's nothing... When you use the term field sobriety test, you're actually referring to drug recognition evidence, because it seemed to me that at some point there was another officer who was, I guess, trained to do DREs, who was actually looking and doing the... I forget what the name of it is. It starts with an N. The stigma test or whatever, to see if his eyes track the finger and all that good stuff. Yes, there was one done in the field, as I understand it from the record, and so they looked at, I think there was like a greenish coating on his tongue, and they looked at the eyelid tremors, which is I think what Your Honor's referring to. They took his heart rate, and then after they took him back to the police station, I think there was additional and a blood test as well. But, you know, the field sobriety test, it's true, wasn't done until some of the other steps had been taken, but the government contends that at every moment in those 20 minutes that the defense sites, the officers were diligently pursuing both of those investigations into the vehicle theft and into whether the driver was driving under the influence. There's also a separate misdemeanor that I don't think the appellant has mentioned, which is, it is a misdemeanor for anyone, I believe, to smoke in a moving vehicle, and that could have involved the passenger as well. As for the frisk, just to address briefly, I would agree with Your Honors that officer safety did justify frisking both passengers, given that he was alone, there was the smell of marijuana, the driver admitted to having a knife in his pocket, he was also argumentative and resistant to getting out of the car, and I believe Mr. Tran himself also admitted that he had a knife in his pocket, and so the frisks in both cases were reasonable, particularly given the suspicions that the officers had with respect to both vehicle theft and driving under the influence. One of the last points I wanted to address is the point in the opening brief that the officers didn't check the two containers of marijuana that they did find, and I just wanted to make sure that those containers were clear, and so it was easy for the officer to tell very quickly what was and wasn't inside of them. Is this the one in the driver's pocket and the other in the backpack? Correct. The driver's pocket looks like a glass jar, and I think it's pretty clear on the body camera footage, you can see inside what's in there, and then what's found in Mr. Tran's backpack is described as a Tupperware-type container.  He did say he had marijuana in the backpack, and I think one of the points Appellant is making is that, you know, obviously they weren't looking for burned marijuana because they found containers of marijuana and didn't search them, but it was clear from looking at them from the outside that they didn't contain burned marijuana or any kind of paraphernalia. And I'm happy to address any other points or submit if the court has no further questions. No, we have no further questions. Thank you, your honors. As I say, counsel, we'll give you two minutes. Thanks very much, Your Honor. Just a couple points to clarify. First of all is that when the driver admitted to smoking that morning, that was after the searches had already occurred, so that should not be taken into account in the resource suspicion or probable cause analysis. Counsel mentioned a California violation for anyone smoking in a moving vehicle. That's California Code 11-3623-A, and I believe that's only an infraction punishable by a fine, which is made clear in the subsequent provision 11-3624. So, I'm sorry, I don't understand. The distinction between the infraction and a misdemeanor, wouldn't the police still have the right to conduct an investigation to determine whether this was a vehicle? Investigation, but I don't believe a search of a vehicle, generally probable cause, to conduct a search is based on arrestable offenses as opposed to just a mere, like, fine, so they wouldn't, they wouldn't. What case do you have to support that proposition? I'm not at my fingertips. I'm sorry, I could follow up on that. I'm not aware of one. So, for example, in a traffic stop, a traffic violation would not usually be a basis to search a car. It would be a probable cause of a crime, is the idea there. Okay. In terms of the glass jar, our argument there is that on the video, the officer removed it from Mr. Wynn's pocket for less than a second, and you could see that while the walls of it are opaque, it has a, it seems to be clear, it has an opaque top. I don't believe that was an, he barely looks at it. It's, it's. I mean, I could tell from looking at the video that it looked like marijuana. I mean. Right. The question is, if he was looking for a partially smoked marijuana cigarette, why didn't he open that jar? I, I, the question, again, being whether, but you can't see the entire thing, because half of it is, the top is opaque. What's the idea? Okay. Um, the last point, just being that, again, the issue with prohibition is whether they diligently pursued their investigation, and there's a lot they did not do while they were doing this far-ranging search. I see I'm out of time, so I thank you for the time. All right. We thank counsel for their arguments, and the case just argued is submitted.
judges: TALLMAN, BENNETT, Lasnik